```
             UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF MISSISSIPPI
                    EASTERN DIVISION
```

DAVID BLANKS AND RHONDA BLANKS                               PLAINTIFFS

VS.                              CIVIL ACTION NO. 4:05CV137TSL-LRA

LOCKHEED MARTIN CORPORATION,
JACK JOHNS, STEVE COBB, THE
ESTATE OF DOUGLAS WILLIAMS,
JOHN DOES 1-10, AND XYZ
PROFESSIONAL ASSOCIATIONS 1-10                               DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendants Lockheed Martin Corporation, Jack Johns and Steve Cobb for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Plaintiffs David Blanks and Rhonda Blanks have responded to the to motion and the court, having considered the memoranda of authorities, together with attachments, concludes that the motion is well taken and should be granted.

Plaintiffs filed this action seeking to recover damages alleged to have been sustained by David Blanks (and for Mrs. Blanks' consequent loss of consortium) as a result of an incident that occurred at the Lockheed Martin plant in Meridian, Mississippi in July 2003, in which Blanks' coworker, Lockheed employee Douglas Williams, went on a racially-motivated shooting rampage, during which he killed and wounded several of his coworkers before turning one of his guns on himself.  Although Mr.

Blanks was not physically injured during Williams' shooting rampage, he did witness the shootings and filed this suit alleging various theories for the recovery of damages for the emotional distress he suffered as a result of the incident.[1] Previously, by order dated June 23, 2006, this court dismissed Blanks' state law tort claims against Lockheed and plant managers Jack Johns and Steve Cobb based on the exclusivity bar of the Mississippi Workers' Compensation Act, and based, more particularly, on the court's conclusion that "Lockheed's actions and inaction which allegedly led to or caused Williams' rampage [were] not 'intentional' . . . because Lockheed did not have an actual intent to injure [its employees]." Blanks v. Lockheed Martin Corp., Civil Action No. 4:05CV137TSL-LRA, Slip op. at 4 (S.D. Miss. June 23, 2006).[2] The dismissal of those state law claims left a single

---

[1] Plaintiffs' original complaint, filed in the Circuit Court of Lauderdale County, Mississippi, asserted only state law claims based on allegations that Blanks worked in the Lockheed plant in the same area as Doug Williams, and that on July 8, 2003, he "was present, viewed the shootings, and was threatened and put in fear of his life by Doug Williams' actions."

[2] The court's ruling in this regard was dictated by the Fifth Circuit's opinion in a case brought by the estate of one of Williams' shooting victims. As the court observed in its previous opinion in this cause, the Fifth Circuit concluded in Tanks v. Lockheed Martin Corp., 417 F.3d 456 (5th Cir. 2005), that proof that Lockheed Martin failed to act to protect its workers from Williams in the face of substantial knowledge that Williams harbored extreme racial hatred, that he desired to inflict harm against his black coworkers, that he had explicitly threatened such harm and that he routinely brought loaded guns in his truck to work, did not support characterization of Lockheed Martin's actions

claim in the case, that being David Blanks' claim for alleged violation of 42 U.S.C. § 1981.  Defendants have now moved for summary judgment as to this claim.

Blanks' § 1981 claim was first set forth in his second amended complaint, in which he alleged that he "witnessed Doug Williams shooting and killing [Blanks'] co-workers and friends," that he "tried to help those who had been shot and then attempted to confront Williams," and that "because Doug Williams knew of David Blanks' friendship with some of the blacks who worked at Lockheed, David Blanks was threatened and put in fear of his own safety while in the zone of danger of Doug Williams' shooting rampage."  On the basis of this final allegation, Blanks asserted his claim for violation of § 1981.  The gist of Blanks' § 1981 claim, therefore, is that Doug Williams' shooting rampage was driven by his extreme racial hostility toward his black coworkers, of which Lockheed and its managers were acutely aware; that although Blanks is himself white, Williams was aware of Blanks' friendship with some of the black workers at Lockheed and, during his shooting rampage, witnessed Blanks attempting to render aid to some of his fallen black coworkers; and that as a result, Blanks was therefore "threatened and put in fear of his own safety while

---

as "intentional" so as to avoid the Workers' Compensation Act's exclusivity bar.  <u>Blanks v. Lockheed Martin Corp.</u>, Civil Action No. 4:05CV137TSL-LRA, slip op. at 2 (S.D. Miss. June 23, 2005).

in the zone of danger of Doug Williams' shooting rampage."[3]  In other words, plaintiff is alleging he was subjected to racial harassment (a hostile work environment) because of his friendship with black coworkers.  Defendants take the position that as plaintiff was not a member of the protected class that was the alleged target of discrimination, he has not standing to pursue his claim herein.

It is well established that § 1981 protects the rights of all persons, including white persons, to be free from racial discrimination and harassment in the workplace, and thus white

---

[3]   Blanks' § 1981 claim, which appears as Count 8 of Blanks' second amended complaint, states as follows:
> As African-Americans, Thomas Willis, C.J. Miller, and Lynette McCall were members of a protected class under Title VII, 42 U.S.C. § 1981 *et seq.*
>
> Those parties were deprived of the benefits, privileges, terms and conditions of their contractual relationship with Defendant Lockheed, which, through its intentional, reckless, grossly negligent and negligent acts, discriminated against them in violation of 42 U.S.C. § 1981 et seq. because of their race.
>
> The actions of Doug Williams were malevolent insofar as they were directed toward David Blanks, who was placed in fear for his life as he attempted to render assistance to McCall, Willis, and Miller, and then followed Douglas Williams with the intention of confronting him.  Those actions thus constituted an intentional assault upon David Blanks.
>
> David Blanks, as a party to the assault of Willis, Miller and McCall, was directly affected by defendant Lockheed's breaches of its statutory responsibilities, and is entitled to compensation based on those breaches.

persons have standing to sue under § 1981, just as do blacks, where they claim to have suffered racial discrimination and/or harassment. See McDonald v. Sante Fe Trail Transp. Co., 427 U.S. 273, 96 S. Ct. 2574, 49 L. Ed. 2d 493 (1976). It is also clear that to have standing to pursue a § 1981 claim, the plaintiff must himself have suffered harm as a result of the alleged discrimination and/or harassment. Thus, a plaintiff lacks standing to recover for injury *to third parties* from discrimination based on their protected classes, where plaintiff does not belong to that class.[4] See Equal Employment Opportunity Commission v. Mississippi College, 626 F.2d 477, 483 (5th Cir. 1980) (Title VII case, observing that a plaintiff "may assert only his own right to be free from discrimination that has an effect upon him and may not assert the rights of others to be free from discrimination").

Whether a plaintiff has standing to recover for discrimination directed against persons in a protected class of which he is not a member largely depends on the nature of the harm

---

[4] Standing is typically found where the plaintiff, though not the direct target of a defendant's discriminatory practices or harassment, is a member of the same class as those persons who are the targets of discrimination and harassment. See, e.g., Leibovitz v. New York City Transit Authority, 252 F.3d 179 (2d Cir. 2001) (female plaintiff had standing under Title VII to pursue claim for emotional trauma she suffered as a result of allegedly hostile work environment as a result of harassment of women other than herself).

he claims to have suffered.  Most courts will find standing where the plaintiff is able to point to a specific benefit or opportunity he has lost as a result of discrimination against others.  See, e.g., Clayton v. White Hall School Dist., 875 F.2d 676 (8th Cir. 1989) (white employee of school district whose child had been allowed to attend school within district notwithstanding fact that employee lived outside district had standing to sue under Title VII based on district's alleged racially-motivated enforcement of residency policy against black employee to keep his child out of district's schools, which resulted in district also enforcing policy against the white plaintiff); Angelino v. New York Times, 200 F.3d 73, 92 (3d Cir. 1999) (holding that male plaintiffs had standing to sue for loss of employment and seniority on a priority list resulting from the defendant's discrimination against female co-workers, where male plaintiffs alleged that hiring for work shifts would stop just before the names of women on the priority list were reached, so that males listed below those names would also not be hired); cf. Zeilonka v. Temple Univ., No. Civ. A. 99-5693, 2001 WL 1231746 (E.D. Pa. 2001) (finding white plaintiff had no standing to pursue claim for "indirect discrimination" because the plaintiff did not contend the employer's alleged racial discrimination aimed at a black coworker resulted in the plaintiff's loss of tenure and promotion, which was instead alleged to have been caused by retaliation for

her support of black candidate). But see Patee v. Pac. N.W. Bell Tel., 803 F.2d 476, 478 (9th Cir. 1986) (finding that male plaintiffs in same work/pay classification as female coworkers lacked standing to assert Title VII claim that discrimination against female coworkers also resulted in lower pay for them).

In contrast, some courts have denied standing where a plaintiff claims to have suffered emotional distress as a result of discrimination against coworkers. See, e.g., Bermudez v. TRC Holdings, Inc., 138 F.3d 1176, 1180 (7th Cir. 1998) (holding that white plaintiff lacked standing, stating, "If unease on observing wrongs perpetrated against others were enough to support litigation, all doctrines of standing and justiciability would be out the window."); cf. Childress v. City of Richmond, 134 F.3d 1205, 1209 (4th Cir. 1998) (affirming dismissal for lack of standing claims of white male plaintiffs that defendant's unlawful discrimination against women and blacks in the workplace created sufficiently cognizable injury, namely, the breakdown of esprit de corps that results from working in a racially or sexually polarized environment).

There is, however, a rather substantial line of cases finding standing under Title VII and under § 1981 where plaintiffs who are not in the protected class have claimed that discrimination against third parties in a protected class caused them to lose the benefit of interracial association. Among these is Equal

Employment Opportunity Commission v. Mississippi College, 626 F.2d 477, 482 (5th Cir. 1980), in which the Fifth Circuit, while acknowledging that "a Title VII plaintiff may assert only his own right to be free from discrimination that has an effect upon him and may not assert the rights of others to be free from discrimination," id., held that a white teacher had standing to sue based on the defendant's alleged racially discrimination against blacks in recruitment and hiring.  The court reasoned that the plaintiff was not asserting the rights of black applicants or prospective applicants to be free from discrimination, but rather was suing for her own injury that resulted from that discrimination.  To the point, the court held, the plaintiff had standing because she "could claim that the discrimination deprived her of the benefits arising from association with racial minorities in a working environment unaffected by discrimination." Id. at 483 (citing Trafficante v. Metropolitan Life Ins., 409 U.S. 205, 93 S. Ct. 364, 34 L. Ed. 2d 415 (1972)); See also Clayton v. White Hall Sch. Dist., 875 F.2d 676, 679-80 (8th Cir.1989) (finding standing where plaintiff alleges hostile work environment injury from loss of association with minorities); Waters v. Heublein, Inc., 547 F.2d 466, 469 (9th Cir. 1976) (finding that white plaintiff had standing under Title VII to sue for discrimination against blacks and persons with Hispanic-sounding surnames to sue for deprivation of "[t]he benefits of interracial

8

harmony"); Stewart v. Hannon, 675 F.2d 846, 850 (7th Cir. 1982) (Title VII case finding that white employee could be aggrieved by lack of black employees in the workplace if that produced "the loss of important benefits from interracial associations"); Richardson v. Restaurant Marketing Ass'n, Inc., 527 F. Supp. 690, 694 (N.D. Ca. 1981) (white plaintiff had standing to sue under Title VII and § 1981 based on allegation that as a result of defendant's employment practices, including termination of and refusal to hire black workers and racial hostility toward and concerning black workers, "she was denied the benefits of a work environment conducive to interracial harmony and association"); cf. Patee v. Pac. N.W. Bell Tel., 803 F.2d 476, 478 (9th Cir. 1986) (finding the male employees lacked standing where they did not "claim that they have been denied interpersonal contacts with women or that the alleged sex-based wages discrimination has deprived them of harmonious relationships" with their female coworkers).

Whether the approach of these latter cases translates to claims of derivative hostile environment may be debatable;[5] but

---

[5] In Bermudez, the court described the nature of the alleged injury in a situation in which a white employee witnesses racial discrimination directed toward black employees as an "adverse reaction to observing someone's else's injury," which it concluded was not actionable. In contrast, referring to its prior opinion in Stewart v. Hannon, infra p. 8, the court explained that a white employee "could be was aggrieved by the lack of black employees in the workplace if that produced 'the loss of important benefits from interracial associations,'" but that kind of loss,

the court need not consider the issue here, for Blanks' claim is not that he was deprived of the benefits of association with his black coworkers. Rather, as he has made clear in his complaint and response to defendants' summary judgment motion, his claim is that he was subjected to racial harassment *because of* his "association" with his black coworkers.

Courts that have considered the issue have consistently held that Section 1981 (and Title VII) extend to claims of "association discrimination," see Rosenblatt v. Bivona & Cohen, P.C., 946 F.Supp. 298, 300 (S.D.N.Y. 1996) ("It is well-settled that a claim of discrimination based on an interracial relationship or association is cognizable under Section 1981."), though some courts have suggested that a friendship, such as that alleged here, is not a substantial enough relationship to support such a claim.

All courts recognize that a spousal relationship or other family relationship between the plaintiff and the person of a protected class that gave rise to the associational discrimination claim will support such a claim. See, e.g., Alizadeh v. Safeway

---

the court wrote, is "a personal loss," albeit one "which must be proved rather than just asserted." Bermudez, 138 F.3d at 1180-1181 (citing Childress v. Richmond, 134 F.3d 1205 (4th Cir. 1998) (en banc) as example of case where court was divided "on the question whether the approach of cases such as Stewart translates to claims of derivative hostile working environments").

(Wis.),1998)

Stores, Inc., 802 F.2d 111 (5th Cir. 1986) (holding that if the white plaintiff was terminated because of her marriage to someone her employer considered to a nonwhite, the termination violated § 1981); Faraca v. Clements, 506 F.2d 956 (5th Cir.), cert. denied, 422 U.S. 1006, 95 S. Ct. 2627, 45 L. Ed. 2d 669 (1975) (implicitly holding that § 1981 provides a cause of action to a white spouse who alleges that he was discriminated against in employment because of his marriage to a nonwhite); Parr v. Woodmen of the World Life Ins. Co., 791 F.2d 888, 892 (11th Cir. 1986) (same); Dawes v. Motel 6 Operating L.P., No. CV-04-3120-EFS 2006 WL 276928 (E.D. Wash. 2006) (same); Rosenblatt v. Bivona & Cohen, P.C., 946 F. Supp. 298, 299 (S.D.N.Y. 1996) (same); Chacon v. Ochs, 780 F. Supp. 680, 680-81 (C.D. Cal. 1991) (same); Holiday v. Belle's Restaurant, 409 F. Supp. 904, 905 (W.D. Pa. 1976) (white plaintiff alleged defendant caused her constructive discharge based solely upon her race and the belief that she was married to a black man); Tetro v. Elliott Popham Pontiac, Oldsmobile, Buick, and GMC Trucks, Inc., 173 F.3d 988, 993-994 (6th Cir. 1999) (finding standing where white employee alleged he was discharged because his child was biracial).

So, too, have the courts consistently found that discrimination based on "dating" or "romantic" relationships may be pursued under an "association discrimination" theory. See, e.g., Deffenbaugh-Williams v. Wal-Mart Stores, Inc., 156 F.3d 581,

11

588-589 (5th Cir. 1998) (finding cognizable Title VII claim where white employee alleged she was terminated for dating a black employee, stating, "Title VII prohibits discrimination in employment premised on an interracial relationship."); Fiedler v. Marumsco Christian School, 631 F.2d 1144 (4th Cir. 1980) (holding that white student expelled for dating black student was denied the right to contract because of racial association); Erwin v. Mister Omelet of America, Inc., 1991 WL 32248, *1 (M.D.N.C. 1991) (finding that white woman fired based on interracial romantic relationship had standing to sue under Title VII); Whitney v. Greater New York Corp. of Seventh-Day Adventists, 401 F. Supp. 1363 (S.D.N.Y. 1975) (finding that white woman, allegedly discharged because of her social relationship with a black man, had standing to bring a Title VII action).

However, courts have divided on whether other, less "substantial" or "significant" relationships, will support such a claim. Some hold they will not. See Zielonka v. Temple Univ., No. Civ. A. 99-5693, 2001 WL 1231746 at 6 (E.D. Pa. Oct. 12, 2001) (holding that plaintiff's "friendly acquaintance" with another professor who was allegedly discriminated against was insufficient for a Title VII claim); Robinett v. First Nat'l Bank of Wichita, Civ. A. No. 87-2561-S, 1989 WL 21158 at *2 (D. Kan. Feb. 1, 1989) (holding that "good friendship" of a white plaintiff with a black coworker was insufficient to establish the type of relationship

12

necessary to support a cause of action for associational discrimination); cf. Baker v. Wilmington Trust Co., 320 F. Supp. 2d 196, 203 (D. Del. 2004) (holding that plaintiffs' claim for "associational discrimination" not well founded "because it was based on their acquaintance as bank tellers with the Patels as customers," and observing that "the courts have recognized that associational discrimination claims must have as their basis a much more significant relationship").

Other courts have allowed "association discrimination" claims to proceed on the basis of mere friendly and/or social relationships.  In Drake v. Minnesota Mining & Manufacturing Co., 134 F.3d 878 (7th Cir. 1998), for example, the white plaintiffs alleged they were subject to a hostile work environment, in violation of Title VII and § 1981, due to their friendship with black co-workers.  The court rejected the defendant's argument that "some objectively quantifiable 'degree of association' is required in order to state an associational claim," and held, instead, that "the key inquiries should be whether the employee has been discriminated against and whether that discrimination was 'because of' the employee's race," an inquiry in which an objective "degree of association" is not relevant.  Id. at 884.  Thought the court tends to agree with this reasoning, ultimately its view of the issue is of no moment because here, the facts do not support a finding that Blanks was subjected to harassment at

13

all, much less that he was subjected to harassment because of his friendship with black coworkers.[6]

There is ample evidence that Williams' shooting spree was racially motivated. He had extreme racial animosity toward blacks, and toward black coworkers in particular. It was known that he had threatened to kill black employees at Lockheed, and had told others he believed a race war was coming and that he was stocking up on guns and ammunition. Blanks reported that on the day of the shooting, when he saw Williams enter the plant and begin shooting, he knew that racial issues were at the root of the shooting and he told black coworkers to hide. He then went to the work area of his black friends, Lynette McCall and Thomas Willis, where he found that both of them had been shot, along with another coworker, Reverend Charles Miller, who was also black. Willis was already dead, Miller died while he was standing there, and McCall was still alive, but barely. As Blanks tried to help McCall, he saw Williams about ten yards away, facing him, reloading his shotgun. At that moment, Blanks was "terrified" that Williams would kill him because of his friendship with McCall and the other blacks; but Williams instead turned and began walking away, heading in the direction of the plant where another black

---

[6] Blanks does not claim that he was subjected to actionable racial harassment prior to the shooting incident of July 8, 2003, and therefore, his hostile work environment claim is based solely on his exposure to the July 8, 2003 shootings.

14

employee, Sam Brewer, worked.  As Blanks headed off in that same direction to try to keep Williams from killing Brewer, he heard a shot, and found that Williams had shot himself.

Although Blanks may reasonably have feared that Williams would harm him because of his friendship with Willis, McCall and other black employees of Lockheed, the fact is, Williams did not threaten to harm Blanks, verbally or otherwise, and Blanks does not recall Williams ever making a move to harm him, or for that matter, even looking in his direction.  As defendants correctly argue, his subjective belief that he could be harmed cannot possibly be sufficient to establish that any alleged harassment was directed at him so as to create liability for defendants.

For all of these reasons, the court concludes that Blanks cannot succeed on his claim under § 1981.  Therefore, it is ordered that defendants' motion for summary judgment is granted.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this 28th day of September, 2007.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE